IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

_____
                                )
UNITED STATES OF AMERICA,        )
                                 )
                                 )      DOCKET NO.
            vs.                  )      3:22-CR-122
                                 )
LUIS RAMIREZ AVILA,              )
                                 )
            Defendant.           )
_____ )

TRANSCRIPT OF ARRAIGNMENT/BOND HEARING
BEFORE THE HONORABLE DAVID S. CAYER
UNITED STATES MAGISTRATE COURT JUDGE
TUESDAY, JUNE 21, 2022, AT 10:30 A.M.

APPEARANCES:

On Behalf of the Government:

 ROBERT JOHN GLEASON, ASSISTANT U.S. ATTORNEY
 U.S. Attorney's Office
 227 W. Trade Street, Suite 1650
 Charlotte, North Carolina  28202

On Behalf of the Defendant:

 ERIN KIMBERLY TAYLOR, ESQ.
 129 W. Trade Street, Suite 300
 Charlotte, North Carolina  28202


        KATHY CORTOPASSI, RDR, CRR, CRC
              Official Court Reporter
           United States District Court
           Charlotte, North Carolina

1        THE COURT:  United States versus Luis Avila.

2        MS. TAYLOR:  Thank you, Your Honor.

3        THE COURT:  Are you ready to proceed with a

4   detention hearing?

5        MS. TAYLOR:  Yes, Your Honor.

6        THE COURT:  Mr. Gleason, I'll hear from the

7   Government.

8        MR. GLEASON:  Your Honor, the United States is

9   seeking continued detention of the defendant pending the

10  resolution of this case.

11       Your Honor, the defendant is indicted in the Bill

12  of Indictment on three counts of violations of 18 U.S. Code

13  Section 2252 A -- (a)2, which is receipt of child

14  pornography.  And it's alleged that these occurred between

15  dates January 21st, 2021, and two dates in April of 2021.

16       Your Honor, the United States contends that this

17  is a presumption case and that the defense will not be able

18  to overcome that presumption.

19       But I want to turn, Your Honor, to the nature and

20  circumstance of the offense and look at the factors under the

21  Bail Reform Act.

22       Your Honor, the Government's evidence would show

23  defendant had a Snapchat account and that he was having

24  various chats on a site or a snap account known as LJK1NGS.

25  And he was having conversations on the account regarding

child pornography.  He had communication with a victim who told the defendant that he was 15.  Defendant asked the victim to make child pornography himself.  Defendant paid for the pornography and defendant received the pornography.

Specifically, Your Honor, it turned out that there were two boys that are the victims in this investigation and that the boys -- apparently they look like they could be 18, but both of them told the defendant that they were under the age of 18 and both have actually been identified by the FBI and it's been determined that the boys were at the time of the offense 17 and they were under the age of 18.

Your Honor, I would turn now to defendant's personal history and characteristics.

Your Honor, according to the pretrial report, defendant lives with his mother, and they reside currently in Hickory, North Carolina.  The FBI indicated that they had a hard time locating the defendant during the course of the investigation.  They wanted to do a knock and talk with him. Well, apparently the defendant's mother has moved around frequently.  In fact, the defendant made a statement to the FBI that his mother moves around frequently.

Your Honor, the probation office was unable to verify the defendant's citizenship status.  According to criminal record checks, the defendant is shown as being a citizen of Mexico and the United States; however, the

1  probation office was not able to verify his actual
2  citizenship status.
3          The defendant is unemployed and he's been
4  unemployed for approximately two years.
5          Your Honor, the defendant reported that he uses
6  cannabinoids on a weekly basis and had last used a week prior
7  to his interview.
8          Your Honor, the defendant's record reflects
9  reckless driving to endanger, a conviction in Cleveland
10  County District Court in December of 2018.  He received a
11  suspended sentence.
12          Your Honor, the probation office is recommending
13  detention in this case, so is the United States.  We contend,
14  Your Honor, that there's no condition or combination of
15  conditions that would assure his appearance in court or that
16  would protect the community.
17          And, Your Honor, he moves around or has moved
18  around frequently.  He is unemployed.  His citizenship status
19  is unclear.  And, Your Honor, he also uses marijuana or
20  cannabinoids on a frequent basis.
21          Additionally, Your Honor, given the nature and
22  circumstances of the offense involved here, Your Honor, the
23  United States thinks a detention is the appropriate, the
24  appropriate decision in this case.
25          THE COURT:  Ms. Taylor?

1          MS. TAYLOR:  Thank you, Your Honor.

2          Your Honor, this case is challenging for a number

3   of reasons.  The Government indicates it's a presumption

4   case.  That is true.  However, that only means the burden of

5   production shifts to us, and that is not a heavy burden to

6   carry, especially in this case and I'll tell Your Honor for

7   what reasons it is not a heavy burden.

8          First, the pretrial report indicates that

9   Mr. Avila's information could not be verified.  My

10  understanding is it couldn't be verified because they did not

11  choose to speak to his mother because his mother speaks

12  Spanish.  That's why it couldn't be verified.

13         At -- the pretrial report unusually indicates that

14  his mother speaks Spanish and wants the Court to be aware of

15  that.  That tells me that there's a lack of communication

16  here and it's not Mr. Avila's lack of communication.

17         Mr.-- in less than 48 hours, I was able to verify

18  Mr. Avila's citizenship status.  He is a resident, a legal

19  resident of the United States.

20         If I may approach, Your Honor.

21         THE COURT:  You may.

22         MS. TAYLOR:  In the packet I'm providing to the

23  Court is Mr. Avila's valid North Carolina driver's license,

24  his valid employment authorization card, his valid Social

25  Security work permit, and a résumé that he was actually

1  building because he was trying to find a job at the time he
2  was arrested.

3          The pretrial report indicates he's a flight risk
4  due to his ties to Mexico.  That is not accurate.  The only
5  ties Mr. Avila has to Mexico is the fact that he was born
6  there.  He was actually brought here as a three-year-old.  So
7  he's been in the United States since he was three.  He has
8  not returned to Mexico since.  Only him and his older sister
9  are born in Mexico.  His other three siblings are United
10  States-born citizens.

11          He's a documented DACA resident who has, as Your
12  Honor sees, valid documentation that is current here in the
13  United States.

14          In the last week, I've also received at least
15  eight letters of support from his family, who are U.S.
16  citizens, as well, who live in Texas and locally in
17  North Carolina.

18          Also, his really close friend Eric who is also
19  present in court today, seated on my right, is also present.
20  Mr. Avila has also lived with Eric and his mother, so there
21  is another stable residence available for Mr. Avila if he is
22  released.

23          The pretrial report also indicates lack of
24  familial ties, residential ties, community ties, employment
25  ties.  Again, that is not accurate.  Mr. Avila was raised in

1  North Carolina.  His only community ties are here in
2  North Carolina.  He completed all his schooling here in
3  North Carolina and graduated from Hunter Huss High School in
4  2019.  He's only 22 years old and just graduated from high
5  school in 2019, so he's not going to have an extensive
6  employment history.  That is unreasonable to expect of a
7  22-year-old who graduated high school in 2019.  So, again,
8  the presentence report indicating he lacks any of these ties
9  to the community is simply inaccurate.
10             His substance abuse history, again not extensive.
11  He claims to be a weekly user of marijuana, not something the
12  probation office cannot handle.
13             The nature of the offense, Your Honor, this case
14  involves receipt of child pornography.  As the Government
15  indicated, obviously it is my first time hearing it, I'm
16  obviously less concerned about the facts of this case if the
17  gentlemen involved appeared to be 18 and older and actually
18  were 17 at the time and at the time of the offense Mr. Avila
19  was younger than 22.  So he was actually closer to their age
20  at the time of the offense.  We're not talking about your
21  typical victim here.
22             In many of these cases that come before the Court
23  when a person has no criminal histories, no allegations of
24  abuse, no allegations of involving toddlers, many of those
25  gentlemen get bond.  Here, because the probation officer

1  claims he has no ties or was a flight risk, they're not
2  asking for bond here.
3         But the burden of production here has been met on
4  the presumption case.  I have established what his residency
5  status is.  I've established what his employment history is.
6  I've established his community ties.
7         There is no reason this gentleman, this young man
8  who has no record, who has been schooled here, who has been
9  raised here, who has not even been back to Mexico since he
10 was three years old should not receive the benefit of bond.
11 He is not posing a danger to the community.
12        The FBI, from my understanding, has had
13 substantial contact with Mr. Avila.  He's actually cooperated
14 with them and allowed them access to his accounts.  That can
15 only be done if they had contact.
16        Mr. Avila's mother has moved around, but she's
17 always remained in North Carolina.  She's moved around
18 because she was seeking out employment opportunities because
19 she has five kids.  They just lost one a couple of years ago
20 to a tragic incident that was domestic violence-related.  But
21 she's supporting by herself at the time five children.  So
22 she was seeking employment opportunities.  But at no point
23 does she ever flee North Carolina.  So to say that he is
24 unstable just does not jive with the facts and reality.
25        So if you look at his history, he is someone who's

1    not a danger.  He's someone who's not a flight risk.  And he

2    has a Plan B if they believe the mother's residence is not

3    appropriate in this case.

4            So we're asking the Court to consider conditions

5    of release.  And I've been able to speak with Mr. Avila's

6    mother.  She does speak some English.  But her primary

7    language is Spanish.  That should not be a hindrance or a

8    barrier to him receiving bond.  That's just ridiculous.  That

9    should never impact a person's ability to get a bond here,

10   the fact that either that person or their family speaks

11   Spanish.

12           And so we're asking the Court to consider

13   conditions of release in this case.  Thank you.

14           THE COURT:  Is his mother employed?

15           MS. TAYLOR:  Mr. Avila indicates she's a factory

16   worker here in Charlotte.

17           THE COURT:  And what is her immigration status?

18           MS. TAYLOR:  Your Honor, I did not ask.  I don't

19   want to know.

20           THE COURT:  And the exhibits that you've handed up

21   here, the document that says Employment Authorization?

22           MS. TAYLOR:  Yes, Your Honor.

23           THE COURT:  What exactly is that?

24           MS. TAYLOR:  Your Honor, that is -- it is exactly

25   what it is says.  For someone who is a resident, they have to

1    have this in order to work because he's not a citizen.

2           THE COURT:  So your position is he's a legal

3    resident.

4           MS. TAYLOR:  Correct, Your Honor.

5           THE COURT:  Mr. Gleason, did you want to say

6    anything else?

7           MR. GLEASON:  Nothing further, Your Honor.

8           THE COURT:  What is your understanding if he's a

9    legal resident, what would the consequences be if he's

10   convicted on this charge?  Is he subject to being deported?

11          MR. GLEASON:  Your Honor, I don't know the answer

12   to that question.  I mean, his citizenship status, according

13   to the probation office, was not able to be determined.

14          Counsel has indicated that he is a legal resident

15   alien.  I have no evidence to the contrary.  I accept that as

16   being represented in good faith by counsel.

17          What would the effect be of a felony conviction?

18   I'm not sure, as far as, you know, what his being a legal

19   resident alien and being a convicted felon.

20          THE COURT:  Do you know, Mr. Johnson?

21          MR. JOHNSON:  I really don't know.  I am just

22   going by the option that in most cases I have seen it in

23   this, they can probably help is that (Inaudible) --

24          THE COURT:  Well, I agree with that.

25          MR. JOHNSON:  (Inaudible.)

1    THE COURT:  Not to make any assumptions, but, yes,
2  if he was going through a plea colloquy, I think that would
3  be an appropriate part of it.
4    (Pause.)
5    The Court will set conditions of release unsecured
6  bond in the amount of 25,000.
7    I will require him to submit to electronic
8  monitoring and a home detention.  He may be released when
9  that is in place.
10    The other conditions are that you not violate any
11 local, state, or federal laws, report to the probation
12 officer whenever you're ordered to report.
13    You may not use or possess any weapons or illegal
14 drugs.
15    Probation officer has the authority to drug test
16 you, search your person, your premises, or your computer.
17    It is a regular condition of probation that if you
18 test positive for any controlled substances, you're returned
19 to court.
20    I will order that you submit to a substance abuse
21 assessment and complete any recommended treatment.
22    Your travel is restricted to the Western District
23 of North Carolina.  Any other travel would require permission
24 of the probation officer.
25    Do you have a passport, sir?

1    DEFENDANT:  No, Your Honor.

2    THE COURT:  All right.  You're ordered not to

3  apply for one.

4    And then there are a number of conditions that

5  apply when someone is charged with this type of offense, and

6  they mainly restrict your contact with minors, your use of

7  the Internet and social media and that sort of thing.  And I

8  will be imposing those conditions, and the probation officer

9  will go over those with you.

10    So, Madame Clerk, if you will give me those

11  additional conditions.

12    MS. TAYLOR:  Your Honor, if I may approach the

13  clerk with an address.  And I might have one question

14  regarding the conditions.

15    THE COURT:  Yes, Ma'am.

16    MS. TAYLOR:  Your Honor, he does have three

17  under-age siblings.  If you could make a note so probation

18  office can address whether or not his contact with his

19  siblings will be appropriate in this case?

20    THE COURT:  How old are they?

21    MS. TAYLOR:  One I think is 18.  I think he just

22  moved out of the house.  How old are the other two?

23    5, 14, and 13.

24    THE COURT:  Males or females?

25    MS. TAYLOR:  Two brothers and one sister.

1          THE COURT:  Do you want to be heard on that,

2   Mr. Gleason?

3          MR. GLEASON:  No, Your Honor.

4          THE COURT:  What sort of hours does his mother

5   work?

6          DEFENDANT:  She works, I believe, Sunday through

7   Thursday.  I think it's from 2 to 10, somewhere around there.

8   It's afternoon hours.

9          MS. TAYLOR:  Your Honor, and his close family

10  friend Eric is also present.  He can be a contact for

11  Probation and can also be available to be at the residence

12  for the home check, as well.  So that's something we could

13  also accommodate.

14         THE COURT:  Well, I'm not going to order that

15  because I don't know anything about him.

16         MS. TAYLOR:  No, I mean I could just give

17  Probation his information so they can at least have some

18  communication to work those things out if there's a language

19  barrier because he does speak English.

20         (Pause.)

21         THE COURT:  Well, the first condition relates to

22  not having contact with persons under the age of 18.  I'm

23  going to impose that condition but with the exception of the

24  siblings who live in the home.  And that'll be the condition

25  unless the courts advise that there's an issue with that.

1            So those will be the conditions of release.

2            Do you want these documents back, Ms. Taylor?

3            MS. TAYLOR:  Yes, Your Honor, thank you.

4            If I may approach Probation, Your Honor?

5            THE COURT:  Yes, Ma'am.

6            (Pause.)

7            Is he prepared to be arraigned today?

8            MS. TAYLOR:  Yes, Your Honor, we'll waive formal

9    reading of the indictment, plead not guilty, and request a

10   jury trial.

11           (End of recording, hearing, and transcription.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE


     I, Kathy A. Cortopassi, the Official Court Reporter and officer who listened to the digital recording created by the Clerk of Court, do hereby certify that said hearing, pages 1 through 14 inclusive, is a true, correct, and verbatim transcript of said recorded, audible proceedings, except for the portions noted where no transcription was possible due to the lack of audible recording.

     I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this proceeding was heard; and further, that I am not a relative or employee of any attorney or counsel employed by the parties thereto, and am not financially or otherwise interested in the outcome of the action.


     THIS 1st day of November of 2022.



*Kathy A. Cortopassi*
_____
Kathy A. Cortopassi, RDR, CRC
Federal Official Court Reporter
Western District of North Carolina